UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO: 2:12-cv-14394-GRAHAM/LYNCH

OCULUS OPTIKGERATE GmbH,
a foreign company,

    Plaintiff,
v.

INSIGHT INSTRUMENTS, INC.,
a Florida corporation,

    Defendant.
_____/

**PLAINTIFF OCULUS'S REPLY TO DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS DEFENDANT INSIGHT'S AMENDED COUNTERCLAIM OR IN THE ALTERNATIVE MOTION FOR MORE DEFINITE STATEMENT AND MEMORANDUM IN SUPPORT THEREOF (DE 35)**

Plaintiff Oculus Optikgerate GmbH ("Oculus"), by and through undersigned counsel, files its Reply to Defendant Insight Instruments, Inc.'s Opposition to Oculus's Motion to Dismiss Insight's Amended Counterclaim against Oculus (D.E. 18), Alternative Motion for More Definite Statement, and its Memorandum in Support thereof (DE 35), and states:

**INTRODUCTION**

Insight's Opposition contains numerous internal inconsistencies and, for the most part, ignores the factual allegations that are actually included – or not included -- in the Amended Counterclaim. This Court should avoid being swept up into the generalizations that Insight is forced to rely on, and should examine the actual language used in the Amended Counterclaim. Insight has not, and cannot, point to any allegations in the Amended Counterclaim that fix the deficiencies pointed out in the Motion to Dismiss. Thus, the Motion to Dismiss should be granted in its entirety.

1

**MEMORANDUM**

**A.     Insight does not sufficiently allege a fiduciary relationship, so that Counts VI (constructive fraud) and VII (breach of fiduciary duty) should be dismissed.**

Insight's Opposition reveals even further Insight's struggle to create something that simply does not exist.  There is no fiduciary relationship between Insight and Oculus alleged in the Amended Counterclaim.  Insight's position that a fiduciary relationship exists boils down to just a few allegations in the Amended Counterclaim, none of which help Insight.  While these allegations may show that there was a relationship between the parties, none of them provide any support for this Court to find that a *fiduciary* relationship was adequately pled.

Insight stresses the length of the business relationship between Peter Luloh and Oculus (though, notably, the alleged fiduciary relationship is not being alleged by Luloh, but by Insight).  Yet, Insight provides no legal authority that supports the position that a long business relationship creates a fiduciary duty.  Oculus, on the other hand, has already provided this Court with case law, Orlinsky v. Patraka, 971 So. 2d 796, 800 (Fla. 3rd DCA 2002), that shows that, under Florida law, a fiduciary duty is not created simply by virtue of a long-standing relationship.  Moreover, as detailed in the Motion to Dismiss, Insight has alleged in its Amended Counterclaim that there were, at all relevant times, contracts between Insight and Oculus that governed the relationship.  Based on Insight's own allegations, this is not a relationship that existed on trust, but rather on contractual terms.

The other allegations that Insight relies on to attempt to defeat the Motion to Dismiss also do not help Insight.  For example, Insight points to allegations that Oculus was given (allegedly) full access to Insight's books and records.  Yet, again, these allegations are insufficient to support a fiduciary relationship between the companies, even in the light most favorable to Insight. Why? Because, Insight also alleges that Oculus signed a nondisclosure agreement **before**

being given any access to Insight's books and records actually prove the opposite. Amended Counterclaim at ¶61 (DE 18). Based on its own allegations, Insight *did not* trust Oculus with its confidential financial information without execution of a nondisclosure agreement. Insight makes no effort to refute – nor can it – the case law cited by Oculus, i.e., Taylor Woodrow Homes Florida, Inc. v. 4/46-A Corp., 850 So. 2d 536, 541-42 (Fla. 5th DCA 2003), that the requirement of a confidentiality agreement prior to the provision of financial information actually evidencing a *non-fiduciary* relationship.

Insight also points to allegations in its Amended Counterclaim that it involved Oculus in discussions with a third party regarding the third party's potential purchase of Insight. See Amended Counterclaim at ¶59-60 (DE 18). Yet, there is no allegation that the reason that Oculus was included in these discussions was because Insight "trusted" or relied on Oculus. Rather, the only reason that can be gleaned from the allegations in the Amended Counterclaim is that Oculus was included because the Distribution Agreement (Ex. 1 to Amended Counterclaim) was one of Insight's assets it was trying to sell. Any potential purchaser of Insight would have the potential of a long-term relationship with Oculus and Oculus would thus need to be involved.

Because Insight has failed to allege any facts that support the existence of a fiduciary relationship, Counts VI and VII should be dismissed.

B.  **Insight fails to meet the pleading requirements of Fed. R. Civ. P. 8 or 9, so that its claims should be dismissed.**

As set forth in the Motion to Dismiss, Insight's claims do not meet even the minimal requirements of Fed. R. Civ. P. 8. Insight alleges that it has provided sufficient factual detail to give Oculus "notice" of the claims. Opposition at p. 5 (Section C). But that's not the standard that Rule 8 and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2006), require. As detailed in Twombly, to meet the requirements of Rule 8, Insight is required to do more than "give notice,"

3

it is also required to provide the "grounds" on which the claim rests. 550 U.S. at 556 and FN3. Insight fails to do this.

Oculus has also shown that each of Insight's claims are required to meet the heightened standards of Rule 9 - based on Insight's inclusion of allegations of fraud as the underlying conduct for each of the claims - and that Insight has failed to meet those standards in its Amended Counterclaim. In its Opposition, Insight does not respond to any of Oculus's specific references to allegations that do not meet these standards, but instead merely references equally vague allegations in the Amended Counterclaim.

For example, in Paragraph 139 of the Amended Counterclaim, as part of the claim for breach of fiduciary duty, Insight alleges that "Oculus used its fiduciary position in its actions and misrepresentations to carry out its fraudulent scheme." Oculus has shown that this does not meet the requirements of Rule 9, since it is not clear "who, what, why, where or when" these alleged actions and misrepresentations occurred. Insight does not answer those questions in its Opposition. Rather, Insight instead generally asserts that it alleges the "precise details" of Oculus's alleged scheme in Paragraphs 48 through 82 of the Amended Counterclaim. However, a review of those allegations shows that they do not answer any of the questions posed above either. There is no indication of who took any specific actions, when those actions were specifically taken (if not the precise day, at least the month and year), or any of the other details necessary to meet Rule 9.

Similarly, in relation to Count VI for constructive fraud, Oculus specifically pointed out in its Motion to Dismiss that Insight failed to allege the required detail for allegations in Paragraph 131. Insight fails in its Opposition to show this Court where that detail is. Why? Because it is not in the Amended Counterclaim. Similarly, in Count VIII for civil conspiracy,

4

Insight alleged that Oculus took fraudulent actions. Yet, Insight does not explain what those were, who took the actions, when specifically they were taken or any other similar detail.

Insight's failure to meet the requirements of Rule 9 is also obvious in Count XIII for tortious interference with business relationship. There, Insight asserts that Oculus "fraudulently" contacted Insight's suppliers and used "fraud and deceit" to steal Insight's customers in Paragraphs 80 and 81 of the Amended Counterclaim (DE 18). Oculus specifically pointed to this deficiency in its Motion to Dismiss. Yet, in its Opposition, Insight does not point this Court to any allegations in its Amended Counterclaim that provide detail as to the alleged contact with suppliers or alleged stealing of Insight's customers. Insight still refuses to identify which customers Oculus is accused of stealing (i.e. customers for Oculus's SDI-BIOM or other customers?). This is absolutely necessary for Oculus to prepare a response to the allegation since the identity of the "customer" will dictate the response and any affirmative defenses. For instance, if the alleged "customer" is a customer of Oculus's SDI-BIOM, the defenses will be very different than if the alleged "customer" is only a customer of Insight's other products.

These are not the only allegations containing insufficient detail. There are others, including, but not limited to:

- Paragraph 66: Insight alleges that Oculus and the Third Party Defendants were involved with "contacting Insight's customers and suppliers to steal its business." Yet, no allegations in the Amended Counterclaim explain who contacted Insight's customers or suppliers? When those contacts were made? What was said to the customers and suppliers? Which customers or suppliers?

- Paragraph 68: Insight alleges "Oculus' and the Third-Party Defendants' actions over the past year make it clear that they developed a conspiracy and scheme to put Insight

5

out of business and take over the sale of the SDI-BIOM and other Insight products using fraud, unlawful acts and deceptive behavior." But the sentence ends there. Insight does not explain what the unlawful acts were, what the deceptive behavior was and what the fraud was. It dose not say who took the acts, when and where. Also, the allegation "over the past year" is insufficient to say when each act which Insight asserts is part of the alleged scheme occurred.

- Paragraph 73: Again, Insight asserts very generally that Oculus was involved in "preventing [Insight] from filling orders", "secretly steal[ing] Insight employees" and "stealing and interfering with Insight's customers and suppliers." The same questions apply here as with Paragraph 66. There is no detail. Even as to the alleged inability to fill orders, no detail is provided. Which customers? Orders for what? When were those orders?

- Paragraph 81: Insight again makes allegations that Oculus fraudulently contacted Insights' material suppliers. But it does not say which material suppliers. It does not say which persons contacted them. It does not say when those contacts were made.

- Paragraph 130: In its constructive fraud claim, Insight alleges that Oculus's scheme also included attempts to "harm Insight's reputation with its customers in an effort to put Insight out of business." Yet, Insight does not say what was done to allegedly harm its reputation, when the actions were taken, or who took them.

- Paragraph 133: Also in its constructive fraud claim, Insight alleges that Oculus "acted fraudulently in its actions and misrepresentations to carry out its fraudulent scheme." The only alleged misrepresentation is contained in Paragraph 131, which also fails to provide sufficient information such as who made the misrepresentation, when, etc.

But, just as significantly, what other "misrepresentations" is Insight talking about? Is this the only one? If so, then why did Insight say "misrepresentations" as a plural?

These are just examples of the vague and conclusory allegations in the Amended Counterclaim which do not meet the requirements of Rule 9. Insight apparently hopes that if it sounds adamant enough, the Court will not realize that the information required by Rule 9 is lacking. But focusing on these specific allegations, which Oculus pointed out in its Motion to Dismiss, so that Insight had a full opportunity to point this Court to the allegations that provide the detail, shows that there is significant detail missing that is required by Rule 9.

C.    **Insight's constructive fraud and fiduciary duty claims (Counts VI and VII) are barred by the economic loss rule.**

Insight's argument that the economic loss rule does not bar its constructive fraud and fiduciary duty claims is inherently inconsistent with its own allegations in the Amended Counterclaim. Insight's main position is that it has alleged a scheme to take over Insight and put it out of business that is separate from Oculus's alleged failure to timely provide products to Insight. Yet throughout the Amended Counterclaim, Insight continually ties the alleged failure to timely provide products to the scheme. See Amended Counterclaim at 66, 72, 73, 77,

Moreover, the Amended Counterclaim clearly alleges that elements of the alleged "scheme" are part of Oculus's performance under the Distribution Agreement. Oculus does not necessarily agree with Insight's positions on these matters, but this is how Insight has alleged it, which is what this Court should focus on for purposes of a Motion to Dismiss. For example, in Paragraph 72, Insight alleges that the failure to timely ship products is a "blatant violation of the Distribution Agreement." In Paragraph 76, Insight asserts that "by doing this, Oculus has violated the Distribution Agreement …", so that looking at the prior provision, Paragraph 75, it

is clear that "this" means opening the new Oculus company. So, that too, is related to performance under the Distribution Agreement according to Insight's allegations.

Perhaps the largest indicator that Insight is trying to manufacture independent torts where none exist is in Insight's Opposition. At page 7 of its Opposition, Insight asserts that Oculus's breach of its duty of good faith and fair dealing includes its participation in the alleged scheme against Insight. However, the implied duty of good faith and fair dealing is a contractual obligation, which must relate to performance under a contract. If the breach of this duty was by participation in the alleged scheme, then the ***entire alleged scheme*** must be part of the performance of the contract. Insight cannot have it both ways.

Finally, Insight's argument also fails because Insight incorporates its general allegations from the Amended Counterclaim that Oculus has delayed and failed to ship products (¶66, 73, and 77 (DE 18))  into each of its claims, so that Insight has included this allegation in each of its fraud claims, apparently as part of the scheme. If that was not Insight's intention, then Insight should be required to amend its claims to clarify and avoid this inconsistency. Also, as to Counts VI and VII, Insight's attempt to separate the "scheme" from the delayed or failed shipment fails because Insight cannot avoid the result of its basing the alleged fiduciary duty on the existence of the Distribution Agreement. See Amended Counterclaim at ¶138 (DE 18).  If the written agreement is what creates the fiduciary duty, then, at least for purposes of these two claims, any breaches of the duty must, necessarily, be related to performance of the Distribution Agreement.

For these reasons, the claims are barred by the economic loss rule.

D.      **Insight's claim for breach of good faith and fair dealing must be dismissed.**

As discussed above, Insight seems confused by what it intends to be a contractual obligation and what is intended to be alleged as an independent fraud. Insight asserts that its

claim for breach of the implied obligation of good faith and fair dealing does not include the actions of delaying or not shipping product. But that argument ignores the actual pleadings. In Count II, Insight actually alleges that there was a breach of the implied duty by failing and/or delaying shipments, thus making the claims duplicative. Insight attempts to rely on the allegations of Paragraph 95 to save the claim. That does not work, however, because Paragraph 95 still talks about a "deceitful performance of the contract…in furtherance of its scheme .." Yet, in relation to the economic loss rule argument, Insight asserts that the more general "scheme" is a separate tort, not part of the performance of the Distribution Agreement. Again, Insight cannot have it both ways. Based on the actual allegations within the Amended Counterclaim, this claim must be dismissed.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 24th day of January, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

GUNSTER, YOAKLEY & STEWART, P.A.

By: /s/ Scott W. Dangler
    Scott W. Dangler – Trial Counsel
    Florida Bar # 0429007
    Jennifer Nicole
    Florida Bar # 114578
    450 East Las Olas Boulevard, Suite 1400
    Fort Lauderdale, Florida 33301
    Telephone: (954) 462-2000
    Facsimile: (954) 523-1722
    sdangler@gunster.com
    jnicole@gunster.com
    *Counsel for Oculus Optikgerate GmbH*

FTL_ACTIVE 4284929.2